<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDMOND BENTON,<br><br> Plaintiff,<br><br> v.<br><br>MRS. DOREEN STANZIONE, et al.,<br><br> Defendants. | No. 22cv1476 (EP) (SDA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff, Edmond Benton, a resident of the Special Treatment Unit ("STU"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants the New Jersey Department of Health ("DOH"), Shantay Brame Adams, Doreen Stanzione (collectively, "DOH Defendants"), the New Jersey Department of Corrections ("DOC"), Robert Chetirkin, Jeffrey Crothers, Officer Marti Correa, Sergeant Keith Loney, and Sergeant Grosskopf (collectively, "DOC Defendants"). D.E. 19 ("Second Amended Complaint" or "SAC"). Plaintiff alleges federal and New Jersey state constitutional violations based on inadequate medical and psychological treatment and retaliation for filing this lawsuit. *See generally id.*

Defendants move to dismiss the SAC. D.E. 46-1 ("Motion" or "Mot."). Plaintiff opposes. D.E. 52 ("Opposition" or "Opp'n"). Defendants reply. D.E. 56 ("Reply"). The Court has reviewed the Motion and all relevant items on the docket and decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **GRANT in part** and **DENY in part** the Motion.

I.     BACKGROUND

   A.     Factual Background[1]

Plaintiff is a resident of the Special Treatment Unit ("STU") having been civilly committed in 2016 pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. § 30:4-27.24 *et seq*. SAC ¶¶ 1, 26. The STU is jointly operated by the DOC and DOH. *Id.* ¶¶ 9-10.

Defendants allegedly violated Plaintiff's First Amendment right to access the courts by retaliating against him for filing this lawsuit and his Fourteenth Amendment rights by denying him access to treatment and preventing him from being eligible for release from commitment. *Id.* ¶¶ 3-5. Upon his arrival to the STU, Plaintiff informed the staff that he suffered from severe hemorrhoids and was assigned to a single-cell room as an accommodation. *Id.* ¶¶ 32-33. According to Plaintiff, "[t]he STU's policy that residents must move to the Therapeutic Community (TC) to advance in the program undermines Plaintiff's necessity for a private cell due to his serious medical concerns." *Id.* ¶ 34.

Plaintiff alleges that, after he initiated this lawsuit, Defendants began a pattern of retaliation and harassment against him. *See id.* ¶¶ 35-36. DOC officers repeatedly "tossed" his cell beginning in March 2022, destroying or contaminating his personal items and food in the process. *Id.* ¶ 38. Grosskopf and other DOC officers "destroyed his headphones, television, and radio, wore the same gloves they used to search his toilet to touch perishable food, and ripped the stuffing out of [Plaintiff's] pillow" during one search. *Id.* ¶ 39. "When Plaintiff inquired why they were doing

---

[1] The facts in this section are taken from the well-pled factual allegations in the Second Amended Complaint, which the Court presumes to be true for purposes of resolving the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

this, Defendant Loney punched Plaintiff on the side of the face and pushed him face-first into a wall." *Id.*

Defendants searched Plaintiff's cell six times between March 22 and March 30, 2022, sometimes twice in one day. *Id.* ¶¶ 40-43. The searches allegedly violated established procedures for searching cells by failing to "videotape the cell . . . before a search and again once the search is complete." *Id.* ¶ 44. On July 23, 2023, Correa "conducted [a] 'non-routine' cell search but forged official DOC paperwork and labeled the search as 'routine.'" *Id.* ¶ 46. Correa did not document the state of Plaintiff's cell after the search. *Id.* ¶ 45. During a "non-routine search" on or about July 2, 2022, Correa asked Plaintiff "a barrage of questions concerning the details of Plaintiff's allegations against him" and "asked Plaintiff whom he had been talking to about 'legal matters.'" *Id.* ¶¶ 79-80.

Plaintiff further asserts that Defendants are interfering with his mandated SVPA treatment. For example, he alleges that Defendants "created barriers for Plaintiff to receive treatment based on his current health conditions." *Id.* ¶ 55. Defendants' failure to address Plaintiff's health issues are "preventing him from advancing" in his STU treatment program. *Id.* ¶ 57. Furthermore, Defendants Chetirkin and Grosskopf "intentionally interfere with group therapy sessions by disbanding sessions if there is a non-emergency check or Resident count, even if the session is not located in the same area as the check." *Id.* ¶ 63.

B.   **Procedural Background**

Plaintiff filed the original complaint on March 10, 2022, followed by three "addend[a]." D.E.s 1, 2, 4, 5. On June 23, 2022, the Court directed Plaintiff to file an all-inclusive amended complaint. D.E. 3.[2] On September 16, 2022, Plaintiff amended his complaint, D.E. 11 ("Amended

---

[2] The matter was reassigned to the undersigned on June 28, 2022. D.E. 7.

Complaint"), and filed a motion to appoint *pro bono* counsel, D.E. 12.  The Court permitted the Amended Complaint to proceed and granted the motion for *pro bono* counsel on November 23, 2022.  D.E. 13.

Represented by counsel, Plaintiff filed a Second Amended Complaint on August 22, 2023.  SAC.  The Second Amended Complaint alleges Defendants violated Plaintiff's First Amendment right to access the courts by retaliating against him for filing this lawsuit and his Fourteenth Amendment rights by denying him access to treatment and preventing him from being eligible for release from commitment.  *Id.* ¶¶ 3-5.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), when deciding a motion to dismiss, a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. ANALYSIS

Defendants argue that (1) Plaintiff uses improper group pleading and does not identify which Defendants took which acts, Mot. at 5-7; (2) Plaintiff's claims against the supervisory defendants are improperly premised on the doctrine of *respondeat superior*, *id.* at 7-9; (3) the retaliation claim fails because the alleged cell search does not rise to the level of an adverse action and cannot support a retaliation claim, *id.* at 9-12; (4) the retaliation claim fails because Defendants are entitled to qualified immunity, *id.* at 12-14; and (5) the SAC must be dismissed to the extent it seeks monetary damages against individual defendants in their official capacities, *id.* at 14-16.

### A. Defendants Are Immune From Suit for Damages in Their Official Capacities

The individual Defendants argue that the SAC should be dismissed to the extent it seeks monetary damages against them in their official capacities because they cannot be considered "persons" subject to suit under Section 1983. *Id.* at 14-16.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A State, agency, or an official of the State acting in his or her official capacity is not a "person" within the meaning of Section 1983. *Will*, 491 U.S. at 71. The same is true for Plaintiff's claims based on the New Jersey Constitution and New Jersey Civil Rights Act ("NJCRA"). SAC ¶¶ 87-88. "The [NJCRA] was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions." *Trafton v. City of*

*Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). "This district has repeatedly interpreted [the] NJCRA analogously to § 1983." *Id.*

However, as Plaintiff points out, Opp'n at 30, the individual Defendants are being sued in their individual *and* official capacities. SAC ¶¶ 3-4. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Therefore, because individuals sued in their official capacity are not "persons" amenable to suit under Section 1983, the Court will **DISMISS *with prejudice*** the damages claims against the individual Defendants in their official capacities.

B.  **The Department of Corrections and Department of Health are Immune From Suit**

The Court must also dismiss the DOC and DOH from this action as they are immune from suit.[3] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As such, the Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). This is true for Plaintiff's NJCRA claims as well. *Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012);

---

[3] Defendants do not raise this argument, but the Court must dismiss any claim brought by a plaintiff proceeding *in forma pauperis* seeking "monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii).

6

*Gonzalez v. New Jersey Dep't of Child. & Fams.*, 545 F. Supp. 3d 178, 202 (D.N.J. 2021) ("The Third Circuit has thus concluded that the New Jersey Civil Rights Act does not provide a claim against the State of New Jersey or arms of the State . . . ."), *aff'd in part, appeal dismissed in part sub nom.*, 2023 WL 3884114 (3d Cir. June 8, 2023).

Therefore, DOC and DOH will be **DISMISSED** *with prejudice* from all claims. 28 U.S.C. § 1915(e)(2)(B)(iii).

### C. Counts I and II Do Not Comply With Rule 8

Defendants argue the SAC should be dismissed because it engages in improper "group pleading," Mot. at 5-7. The Court agrees and will **DISMISS** *without prejudice* Counts I (Fourteenth Amendment – inadequate treatment) and II (New Jersey State Constitution – inadequate treatment).

Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "In assessing whether a pleading satisfies Rule 8, there is no bright-line rule to be applied." *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019). "Naturally, a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.*

The SAC impermissibly groups the allegations against Defendants such that it is not clear to the Court, subject to a few exceptions, what each individual allegedly did that violated Plaintiff's Fourteenth Amendment and NJCRA rights. By way of example, Plaintiff alleges that "Defendants have created barriers for Plaintiff to receive treatment based on his current health conditions" and that his requests for treatment "have been well-documented but otherwise ignored by the Defendants." SAC ¶ 55. He later alleges "Defendants have failed to address Plaintiff's documented health issues related to his hemorrhoids . . . ." *Id.* ¶ 57. "Courts in this district

7

generally agree that this type of 'group pleading' does not satisfy Rule 8, because it does not place Defendants on notice of the claims against each of them." *Sheeran v. Blyth Shipholding S.A.*, Civ. No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015). "[W]hen a plaintiff names numerous defendants in a complaint, a plaintiff cannot refer to all defendants 'who occupied different positions and presumably had distinct roles in the alleged misconduct' without specifying '*which* defendants engaged in what wrongful conduct.'" *Reddick v. Hicks*, Civ. No. 22-6926, 2023 WL 4579884, at *3 (D.N.J. July 18, 2023) (emphasis in original) (quoting *Falat v. Cnty. of Hunterdon*, Civ. No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013)).

The majority of the SAC's factual allegations are made against the collective "defendants." *See* SAC ¶¶ 31-75.[4] In the "constitutional violations" section, only six paragraphs name specific defendants. *Id.* ¶¶ 39, 45-46, 59-60, 63. These few paragraphs often fail to set forth facts that would, if true, violate Plaintiff's Fourteenth Amendment rights. For example, the assertion that "Chetirkin and Grosskopf intentionally interfere with group therapy sessions by disbanding sessions if there is a non-emergency check or Resident count," *id.* ¶ 63, does not sufficiently allege that these actions are punitive instead of related to the legitimate governmental objective of ensuring STU residents are accounted for and safe. *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979) ("[I]f a particular condition ... is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"). "Alleging that 'Defendants' undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards." *Japhet v. Francis E. Parker Mem'l Home, Inc.*, Civ. No. 14-1206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014).

---

[4] Paragraphs 76 to 82 make specific allegations against Correa.

In short, Counts I and II do not adequately inform Defendants which of their actions are alleged to have violated the federal or New Jersey State constitutions.  Therefore, the Court will **DISMISS** *without prejudice* Counts I and II.  As Defendants Stanzione and Adams are not named in Count III, the Court will direct the Clerk to dismiss them on the docket.

**D.    Count III May Proceed in Part**

Defendants assert that Plaintiff fails to state a retaliation claim in Count III because "the cell search discussed by Plaintiff does not rise to the level of an adverse action." Mot. at 9.  The Court finds that Plaintiff has sufficiently alleged a retaliation claim against Defendants Correa, Loney, Grosskopf, and the Doe Officers.  The Court will **DISMISS** *without prejudice* Count III as it pertains to Defendants Chetirkin and Crothers.

*1.    Plaintiff states a retaliation claim against Correa, Loney, Grosskopf, and the Doe Officers*

"To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (cleaned up).  It is well established that the filing of lawsuits or grievances constitutes conduct protected by the First Amendment.  *Atkinson v. Taylor*, 316 F.3d 257, 269-70 (3d Cir. 2003).  Defendants do not contest that the first and third elements are satisfied.  Instead, Defendants argue that Plaintiff has failed to allege the second element—an "adverse action."  According to Defendants, a cell search does not rise to the level of an adverse action because STU residents have a reduced Fourth Amendment expectation of privacy.  Mot. at 9-12.

Plaintiff does not bring a Fourth Amendment search claim, however.  He alleges that the DOC Defendants performed multiple cell searches to retaliate against him for filing this lawsuit,

9

in violation of the First Amendment. Plaintiff does not need to allege that the purported retaliatory acts were in and of themselves unconstitutional since "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (cleaned up). To satisfy the second element of a retaliation claim, Plaintiff must only allege that the DOC Defendants took an adverse action that was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016) (internal quotation marks omitted).

"While cell searches are a routine part of prison life, it does not mean that searches that constitute 'calculated harassment unrelated to prison needs' are permissible." *Rosario v. Cook*, Civ. No. 22-866, 2024 WL 1077320, at *3 (M.D. Pa. Mar. 12, 2024) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "The Third Circuit has held that a retaliatory search and seizure may be sufficient to satisfy the adverse action prong of a retaliation clam." *Id.* (citing *Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 124-25 (3d Cir. 2017)).

Plaintiff alleges the DOC Defendants engaged in a pattern of harassment after he filed the original complaint in March 2022. He alleges Correa conducted "non-routine" searches without following proper procedures for documenting the search, SAC ¶¶ 80-81, and that Correa asked him "a barrage of questions concerning the details of Plaintiff's allegations against him" and "asked Plaintiff whom he had been talking to about 'legal matters,'" *id.* ¶¶ 79-80. He further alleges that Grosskopf and other officers destroyed his property and contaminated his food by examining it with the same gloves used to inspect the toilet. *Id.* ¶ 39. He also alleges Loney punched him in the face when Plaintiff asked why this was happening. *Id.* It is plausible that a reasonable factfinder would conclude that these actions were sufficient to deter a person of

ordinary firmness from exercising his constitutional rights and were substantially motivated by Plaintiff's protected activity. Therefore, the Court will allow the retaliation claim (Count III) to proceed against Correa, Loney, and the John and Jane Doe Officers.

2. *Plaintiff fails to state a claim against Chetirkin and Crothers*

Defendants argue that Plaintiff fails to state a claim against the supervisory Defendants, Chetirkin and Crothers, because his claims are premised on the doctrine of *respondeat superior*. Mot. at 7-9. The Court agrees and will **DISMISS** Chetirkin and Crothers from Count III ***without prejudice***.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)) (alteration in original). A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Id.*

"Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights

11

is insufficient to establish personal involvement." *Smith v. Superintendent T. Mcginley, et al.*, 2024 WL 2725041 (M.D. Pa. May 28, 2024) (citing *Rode*, 845 F.2d at 1208).

Count III suffers from the same group-pleading defect that the first two counts do, and lacks sufficient facts about what Chetirkin and Crothers allegedly did that violated Plaintiff's First Amendment rights. There are no factual allegations against Crothers, only a cursory statement that he took "unconstitutional actions." SAC ¶ 59. Chetirkin allegedly "intentionally interfere[d] with group therapy sessions by disbanding sessions if there is a non-emergency check or Resident count," *id.* ¶ 63, but there are not enough facts to plausibly infer that this conduct is retaliatory.

Plaintiff asserts in his Opposition that the "DOC Defendants directed employees to conduct a search with the intention of reading his privileged and personal legal and treatment papers." Opp'n at 15. However, a complaint cannot be amended in the opposition papers. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Moreover, it is not clear from this statement which DOC Defendants ordered the search. Therefore, the Court will **DISMISS** Chetirkin and Crothers from Count III *without prejudice*.

### E. Defendants Have Not Shown That They Are Entitled to Qualified Immunity as a Matter of Law

Defendants argue they are entitled to qualified immunity on the retaliation claim because "[n]o law clearly established that, in March 2022, a single cell search could support a retaliation claim . . . ." Mot. at 12. The Court finds that Defendants are not entitled to qualified immunity as a matter of law at this stage in the case. However, facts learned through discovery may bolster a claim for qualified immunity at the summary judgment stage.

"Under the now-familiar standard for the judge-created defense of qualified immunity, a state officer is shielded from a suit for monetary damages under § 1983 unless 'the official violated a . . . constitutional right,' and 'the right was clearly established at the time of the challenged

12

conduct.'" *Weimer v. Cnty. of Fayette, Pennsylvania*, 972 F.3d 177, 190 (3d Cir. 2020) (omission in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "The officers bear the burden of persuasion under each prong." *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024).

Accepting Plaintiff's allegations as true for purposes of the Motion, Correa conducted "non-routine" searches of Plaintiff's cell after learning that Plaintiff had filed a complaint against him. SAC ¶¶ 77-78. Correa questioned Plaintiff about "the details of Plaintiff's allegations against him" and "asked Plaintiff whom he had been talking to about 'legal matters.'" *Id.* ¶¶ 79-80. Correa did not follow proper procedures for documenting the search. *Id.* ¶¶ 80-81. On other occasions, Grosskopf and other officers destroyed Plaintiff's property and contaminated his food by examining it with the same gloves used to inspect the toilet. *Id.* ¶ 39. Loney punched Plaintiff in the face when he asked why this was happening. *Id.* These allegations state a retaliation claim under the First Amendment[5] and thus Defendants' arguments fail on the first prong of the qualified immunity analysis.

"Because the officers have failed on the first prong of the qualified immunity analysis, they are entitled to [qualified immunity] only 'if they can bear the burden of showing, on the second prong, that reasonable officers could not have known that their actions violated clearly established law.'" *Anglemeyer*, 92 F.4th at 191 (quoting *Mack v. Yost*, 63 F.4th 211, 228 (3d Cir. 2023)). The Court "proceed[s] by defining the right allegedly violated with a 'high degree of specificity' and then asking 'whether that right was clearly established at the time of its alleged violation.'" *Id.*

---

[5] "'Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional,' and this is of course no less true where the retaliation is directed against a civilly committed person." *Oliver v. Roquet*, 858 F.3d 180, 189 (3d Cir. 2017) (quoting *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)); *see also Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982) ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

13

(quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 583 U.S. at 63. "Thus, the central question is whether the existing law gave the officer 'fair warning' that his *particular* conduct was unlawful." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 196 (3d Cir. 2021) (quoting *Schneyder v. Smith*, 653 F.3d 313, 329 (3d Cir. 2011) (emphasis in original)).

The right at issue is the right of a civilly-committed person to be free from retaliatory cell searches because they filed a lawsuit. The Third Circuit has "clearly established a prisoner's right to access the courts so that a reasonable prison official would know that he violates this right if he retaliates against a prisoner for filing a lawsuit." *Atkinson v. Taylor*, 316 F.3d 257, 269 (3d Cir. 2003) (denying qualified immunity); *see also Talley v. Doyle*, 2019 WL 6050739, at *6 (E.D. Pa. Nov. 15, 2019) ("Commonwealth Defendants are not entitled to qualified immunity on Talley's First Amendment retaliation claim."). As the Court has previously discussed, cell searches may be considered adverse actions for retaliation purposes in certain circumstances. After viewing the facts in the light most favorable to Plaintiff, the Court is satisfied that a reasonable officer in March 2022 would have known that it was unconstitutional to retaliate against a civilly-committed person by conducting retaliatory cell searches for filing a lawsuit against them.

The Court therefore denies qualified immunity "at the motion to dismiss stage, noting that the issue may be resurrected at the summary judgment stage." *Stile v. Warden Jordan Hollingsworth*, Civ. No. 17-2693, 2021 WL 302912, at *2 (D.N.J. Jan. 29, 2021).

## IV.   CONCLUSION

For the reasons stated above, the motion to dismiss is **GRANTED in part** and **DENIED in part**. The claims for damages against Defendants in their official capacities are **DISMISSED**

*with prejudice*, Fed. R. Civ. P. 12(b)(6). The New Jersey Department of Health and the New Jersey Department of Corrections are **DISMISSED** *with prejudice*, 28 U.S.C. § 1915(e)(2)(B)(iii). Counts I and II are **DISMISSED** *without prejudice*, Fed. R. Civ. P. 12(b)(6). Count III is **DISMISSED** *without prejudice* as to Robert Chetirkin and J. Crothers. Count III shall **PROCEED** as to Officer Correa, Sergeants Loney and Grosskopf, and the John and Jane Doe Defendants.

Plaintiff may file a third amended complaint within 30 days addressing the deficiencies identified herein. An appropriate Order accompanies this Opinion.

 9/12/2024  
Date

Evelyn Padin, U.S.D.J.